# United States Court of Appeals for the Fifth Circuit

No. 22-30043
Summary Calendar
_____

United States Court of Appeals
Fifth Circuit
**FILED**
May 10, 2023
Lyle W. Cayce
Clerk

Tremayne Jajuan Kelly,

*Plaintiff*,

*versus*

Rodi Marine, L.L.C.,

*Defendant/Cross-Claimant/Cross-Defendant—Appellee*,

*versus*

Island Operating Company, Incorporated,

*Defendant/Cross-Defendant/Third Party Plaintiff/Cross-Claimant—Appellant*,

*versus*

Ascot Insurance Company; Navigators Insurance Company; QBE UK Limited, *trading as* British Marine,

*Third Party Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:20-CV-512
_____

No. 22-30043

Before Richman, *Chief Judge*, and Duncan and Oldham, *Circuit Judges*.

Per Curiam:[*]

Island Operating Company, Inc. (Island), brought a third-party complaint against Rodi Marine, LLC (Rodi), and its insurers asserting that Island is an additional insured under Rodi's Master Time Charter Agreement and that it is entitled to a defense and indemnity from Rodi and its insurers in ongoing personal injury litigation. The district court granted Rodi's motion for summary judgment and denied Island's. Because the additional insured and indemnity provisions of the relevant contract contained limitations of coverage under which Island does not qualify, we affirm.

# I

Arena Offshore, LP (Arena), is an offshore oil and gas developer which hires other companies to provide and transport workers to its platforms. Arena contracted with Island to provide crane operators for the platform—a transaction governed by the Arena/Island Master Service Contract. Arena separately contracted with C&G Boats, Inc. (C&G), to provide boats to transport workers to the platform—a transaction governed by the C&G/Arena Master Time Charter Agreement (C&G/Arena MTCA). C&G is a boat broker that brokered the boat job to Rodi—a transaction governed by the Rodi/C&G MTCA. This dispute arises from the interplay between the C&G/Arena MTCA and the Rodi/C&G MTCA. Tremayne Kelly, a Rodi employee, was injured while an Island-operated crane was about to begin loading workers from a Rodi boat onto the Arena platform. Kelly

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

2

sued Island, Arena, and Rodi for negligence under general maritime law, the Jones Act, and the Longshore and Harbor Workers' Compensation Act.

Island then filed a cross claim/third-party complaint against Rodi, arguing that the Rodi/C&G MTCA granted Island additional insured status, and that Rodi was obligated to a defend and indemnify Island in the Kelly lawsuit. Rodi argued that the coverage in the Rodi/C&G MTCA was limited to the extent of the coverage in the C&G/Arena MTCA, which did not cover Island. The parties submitted a Joint Statement of Uncontested Material Facts. The district court conducted a hearing, after which it granted Rodi's motion for summary judgment and denied Island's, "for the reasons orally assigned" at the hearing and dismissed Island's cross claim/third-party complaint. Island filed a timely notice of appeal.

## II

"'We review a grant of summary judgment de novo, applying the same standard as the district court.' Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"[1] There are two contracts relevant to this dispute—the first is the C&G/Arena MTCA in which C&G promised to provide additional insured status to Arena and to defend and indemnify it. Neither party disputes this contract did not extend those obligations to Arena's contractors, and Island is Arena's contractor. The second contract at issue is the Rodi/C&G MTCA. The parties disagree about whether the additional insured and indemnity provisions in the

---

[1] *Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 604 (5th Cir. 2010) (citation omitted) (first quoting *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009); and then quoting Fed. R. Civ. P. 56(c)).

Rodi/C&G MTCA require more coverage than what is required in the C&G/Arena MTCA.

This dispute involves a maritime contract which is "governed by maritime law."[2]  "A maritime contract containing an indemnity agreement . . . should be read as a whole and its words given their plain meaning unless the provision is ambiguous."[3]  "'Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties.'  Where 'the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous . . . .'"[4]

## A

We start with the text of Section 5 of the Rodi/C&G MTCA.  Section 5.3, which addresses the various insurance policies, states:

> [T]he Customer [Arena]'s agents, servants, contractors [Island] and sub-contractors at every tier, employees, co-lessees, co-venturers, and related, subsidiary, and affiliated corporations, (collectively, the "Additional Assureds") shall by this provision, but subject to the limitation provided below, without listing specific legal names, be additional assureds under the policy with full waiver of subrogation in favor of the Additional Assureds.

---

[2] *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986) (first citing *Lirette v. Popich Bros. Water Transp., Inc.*, 699 F.2d 725, 728 n.11 (5th Cir. 1983); and then citing *Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 691 (5th Cir. 1970)).

[3] *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) (citation omitted) (quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984) (per curiam)).

[4] *Id.* (citation omitted) (quoting *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 286 (5th Cir. 1997)).

The "subject to the limitation below" language is repeated twice more, in the next two sentences, and that limitation is given in the last sentence of the section: "**In all instances, the coverage available to the Additional Assureds other than C&G hereunder shall be no greater than the coverage required to be provided by C&G under the terms of its agreement with any particular Additional Assured**." Section 5.6, which addresses general liability coverage, follows the same pattern, including "subject to the limitation below" three times in the paragraph and ending with the same limitation.

The parties agree that Island, as a contractor of Arena, is an Additional Assured pursuant to the above language. The language of the limitation thus can be read: "the coverage available to [Island] hereunder shall be no greater than the coverage required to be provided by C&G under the terms of its agreement with any particular Additional Assured." Island agrees that the C&G/Arena MTCA is an agreement between C&G and "any particular Additional Assured." So the limitation can be read: "the coverage available to [Island] hereunder shall be no greater than the coverage required to be provided by C&G under the terms of [the C&G/Arena MTCA]."

Island does not argue that *it* is entitled to coverage under the language of the C&G/Arena MTCA, likely because the plain wording of that contract does not include contractors or subcontractors like Island. Instead, Island argues that it is entitled to whatever coverage *Arena* is entitled to under the C&G/Arena MTCA. However, the language of the limitation says that the coverage available to Island shall be no greater than what C&G owes under the C&G/Arena MTCA, it does not say that the coverage available to Island shall be no greater than what C&G owes *to Arena* under the C&G/Arena MTCA. Further, it would not make sense for what is three times referred to in that paragraph as a "limitation" to expand the coverage Island is owed to also include whatever Arena is owed. Island's reading of the provision as an

5

expansion of coverage makes even less sense considering the purpose of these contracts: to broker the boat supply. C&G agreed to provide boats to Arena in the C&G/Arena MTCA. C&G then brokered that responsibility to Rodi, who agreed to grant additional insured status and indemnification, but not any more than what C&G had already promised in the prior agreement.

Island next argues that the limitation only refers to the *type* of coverage—not who is covered. For example, if Kelly was suing for punitive damages but the C&G/Arena MTCA said C&G did not owe coverage for punitive damages, then Rodi would not owe Island coverage for punitive damages. Rodi responds that the types of coverage it owes Island are zero even if Island is listed as an Additional Assured, because of the limitation above. An additional insured with no coverage is not entitled to anything.[5] The coverage limitation is not designed to limit only risks like punitive damages.

Island also argues that there can be no "coverage limitations" because the parties stipulated that "should it be determined I[sland] is entitled to . . . additional insured coverage . . . for the Kelly claim, there are no provision[s] in the British American P&I policy, or the Ascot/Navigators excess Bumbershoot policy, that would give I[sland] anything less than full coverage for the Kelly loss." However, this stipulation refers to the coverage limits in the British American and Ascot/Navigators policy, it does not stipulate to any coverage amount pursuant to the Rodi/C&G MTCA.

Island argues in the alternative that if this court agrees with Rodi's interpretation that the coverage Rodi owes is not greater than what C&G

---

[5] *See Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290 (5th Cir. 2001) ("Assuming all the allegations of the petition are true, the insurer must defend, regardless of the outcome of the suit, *if there would be* both (1) *coverage under the policy* and (2) liability to the plaintiff." (emphasis added)).

owed in its other contracts, there is a different contract under which C&G owed additional insured status and indemnity to Island—the 1999 C&G/Island MTCA. The C&G/Island MTCA does say that C&G "shall name Charterer [Island] its affiliated and subsidiaries, and their respective underwriters . . . as Additional Assureds." However, this contract would not require C&G to grant Island coverage or indemnify or defend Island in the present suit, because this contract did not cover the Kelly incident. The C&G/Island MTCA was created because "CHARTERER [Island] from time to time desires to Time Charter Vessels from OWNER [C&G]" and contemplates "Short Form Charter Agreements" to govern those charters, incorporating this MTCA. There is ample evidence in the C&G/Island MTCA that it only applies when Island is chartering vessels from C&G; the whole contract is structured around those Short Forms to be executed for vessel charters. The specific additional insured and indemnity provisions support that understanding. Here, both parties jointly stipulated that "I[sland] did not charter the [boat] from or through either C&G or Rodi Marine on the date of the Kelly accident that gives rise to this claim," which explains why there was no Short Form charter here. It was Arena that hired Rodi's boat through C&G, not Island. C&G did not owe Island coverage for this incident under the C&G/Island MTCA, and so neither does Rodi.

**B**

The text of the defense and indemnity provisions in the Rodi/C&G MTCA is similarly limited. Section 5.11 reads:

> Notwithstanding said insurance provisions above, it is further understood and agreed that Owner agrees to defend, indemnity [sic] and hold Charterer and Customer Group harmless from and against any claim for damage to property owned by any person or entity, or for personal injury, illness to or death of any person . . . **Notwithstanding the foregoing, the indemnity**

7

**provided to any member of Customer Group hereunder shall be no greater than the indemnity owed by Charterer to any member of Customer Group under the terms of Charterer's own agreement, if any, with Charterer Customers**.

Using the defined terms from Section 1, that limitation reads: the indemnity provided to Island shall be no greater than the indemnity owed by C&G to Island under the terms of C&G's own agreement, if any, with Arena. We reject Island's argument that this provision limits the scope of the indemnity rather than who is indemnified for the same reasons discussed above. Island argues that the use of the word "indemnity" rather than "indemnitee" bolsters its interpretation. The distinction is illusory—if the indemnity owed to a company is zero, that company is not an indemnitee. The fact that the contract could have accomplished the same goal by saying no one will be indemnified who is not an indemnitee under the terms of another agreement does not change our analysis.

Island next argues that the section requires Rodi to defend, indemnify, and hold harmless, which are separate obligations,[6] and the limitation only applies to the indemnification portion. Therefore, according to Island, even if the limitation means Rodi does not have to indemnify Island, Rodi still must defend Island.

However, the word indemnity read in the context of the paragraph as a whole[7] refers to the entire suite of indemnity obligations, which is

---

[6] *See id.* ("The insurer's duty to defend the insured is generally broader than the duty to indemnify.").

[7] *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 271 (5th Cir. 2011) ("'The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument.' When interpreting contract language, courts must strive to give meaning to 'every sentence, clause, and word to avoid rendering any portion inoperative.'" (citation omitted) (first quoting *Nat'l Union Fire Ins.*

No. 22-30043

supported both by the use of indemnity in the other contracts in the record and by the absurd outcome that would result from Island's reading. In the sentences right before the ones quoted above, the contract says, "It is further recognized that Charterer may be obligated by Charterer Customers to provide certain indemnification to the Charterer Customers. . . . It is the intent of this Agreement that these obligations be assumed by Owner." It is reasonable to assume this reference to "certain indemnification" included the entire suite even though defend and hold harmless were not separately spelled out.[8] This is supported by the fact that the other three contracts with indemnity obligations in the record all use the phrase "indemnity" to reference the entire suite of obligations. Rodi owes no duty to indemnify, defend, or hold Island harmless under the Rodi/C&G MTCA.

\* \* \*

For the foregoing reasons, we AFFIRM.

---

*Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam); and then quoting *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998))).

[8] *See Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981) ("A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.").